Cukia, per
Nott, J.
The principles by which this - case is to be governed have been so often recognised by this court that it is unnecessary to add any thing to what has already been said on the subject. Permitting ne-groes to go home with a daughter on her marriage has • always been considered as prima-faeie evidence of an unconditional gift, and the only question now for our consideration is whether the circumstances of this case make it an exception to the general rule? Mrs. Hill a daughter of the donor and Mr. Byrd the donor himself are the only witnesses from whom we derive any knowledge of, the nature or circumstances of the gift.
Mrs. Hill says “that when Allen married and was about to remove, her mother, Mrs. Benjamin Byrd, told two negro girls as women to go and help. Leah, his wife, one was or return shortly the other to remain longer to assist her, neither to stay very long. Herfather was not present. Witness did not expect they went to stay long or that they were Aliens.”
It- will here be observed, that neither the donor nor the donee were present at this time. No contract, therefore,. was then made, nor the tenure prescribed by which the donee should hold the property. It was a mere act of kindness on the part of the mother to her daughter who.' was about to commence house keeping; and if the negroes- *230 had returned, as was then expected, within any reasona * ble time, it would have been considered as it is now contended on the part of the plaintiff as a legitimate loan; and no question could have arisen with regard to the right of property. One of these women afterwards returned to the family of the donor, and has ever since continued with him. The other continued in the possession of the donee for four years; was claimed and used as his own during that whole period, without the interposition of any right or claim on the part of the father in law. Such a length of possession would have given a statutary right, and would be conclusive evidence of the intention of the parent; and that view.is strengthened by the circumstance that at the end of four years instead of reclaiming the property as a loan be executed a deed of trust to the plaintiff for the use of his daughter, who it seems to be admitted, was the original object of his bounty. If it was intended as a gift to his daughter it immediately vested in her husband by the operation of law, and although he might, as i regarded his own right, afterwards consent that it should be made over to trustees for the benefit of his wife, he could not by a voluntary settlement defeat the just rights of creditors. The inference therefore from this state of facts is that the property must be considered as belonging to Allen and subject to the payment of his debts. Let us now see whether the testimony of Mr. Byrd himself will, lead to a different conclusion? He says he never intended to give them to Allen and never did so. He admits that they went into his possession in the manner stated by Mrs. Hill, and that he never claimed them from him nor called on him for them. His reasons for not giving them were, first, because he did not consider them as his own; and secondly, because Allen was embarrassed. With regard to the first there is. no doubt but that he had a. good right himself, but suppose, his right to be doubtful. *231 if he intended to give all he had, as between himself and the donee, it would be a good gift. As to the second, it may have been a good reason with him'why he should not have given the property; but if the circumstances attending the transaction were in point of law such as to constitute a gift no mental reservation of a contrary intention should controul their operation. There must have been some express stipulation at the time, distinctly understood by both parties, in order to give effect to such an intention. It is not therefore a question what he intended, but what he actually did. If a man give property to his daughter and the heirs of her body the law will construe it into an absolute gift, although he intended it to have a different effect. We are bound therefore, from Mr. Byrd’s own testimony to consider the property as actually vested in Allen. All the other testimony goes to strengthen this view. The purport of it is that Allen had the undisturbed possession of it until the deed of trust was executed. He had during that whole period the sole and unqualified use and enjoyment of it and was to all intents and purposes the ostensible owner. This analysis of the evidence leads to the inevitable conclusion that as to creditors he must be regarded as such. And when we look at the circumstances in the aggregate they present a view of the case which cannot be mistaken. Mr. Boyd had no great confidence in his son in law. He was, as he expressed it, a trading and extravagant man. He nevertheless intrusted him with those negroes without any stipulation, as to the tenure by which he was to hold them. Allen had a right to consider them as his own, and everybody else had a right to consider them as such. Mr. Byrd may have supposed he had a right to controul their future destiny if circumstances should render it necessary, but in that he was mistaken; and if Allen had turned out an economical, industrious, man, prosperous in his business. *232 it is manifest that he never would have interfered; for it 'was not until he was broken or about to break, that the deed was executed. Then it was he found that Allen ■ could no longer be trusted, and then it was, it appears, that for the first time, he found it necessary to carry his intention into execution, of making a separate provision for his daughter, and to put the property equally beyond the control of her husband and the grasp of his creditors. But he began too late. .He had contributed-to hold him out to the world as the owner of the property, and it would be a palpable fraud upon his creditors, who had thus been invited to place confidence in him to take from them the security to which they had trusted with the consent of the donor himself.
It has been contended that there is no evidence that Allen was insolvent at the time the deed of trust was made. But his property is estimated by the donor himself at that time at only about fifteen hundred or two thousand dollars, and he does' not know the amount of his debts. It is in proof that he was indebted to the bank, for which the defendant was surety, six hundred dollars. That shortly afterwards he borrowed five hundred dollars more and that the donor himself considered him in failing circumstances; and I believe that no case can be found where a voluntary deed under such circumstances has been held good against existing creditors.
But let us go one step further and suppose that it had been distinctly understood between the parties that this .should have been a loan and that the donor might retake the property at any indefinite period. Although such a contract might possibly be good between the parties it is a question worthy of consideration whether it could effect the rights of creditors. I do not intend to make it a ground for anew trial in this case, yet I think it a question which ought not to be overlooked in deciding cases of this *233 sort Most of the cases, which we have hitherto had, have been between the donor and donee, or persons claiming in the same right, and in those cases the inclination of the court has been strongly in favor of the do-nee, and the claim is still stronger when the rights of creditors are involved. I am not opposed to allowing to parents the most liberal indulgence of their affection for their daughters in making ample provision for them. Every person ought to be at full liberty to do as he pleases with his own, and no parent is under any obligation either legal or moral to place at the disposal of a profligate son in law the provision which he is disposed to make for his daughter. The laws of nature require that it should be at his own disposal, and the laws of the land do not forbid it. But they have prescribed the method by whichit ought to be done so as not to do injustice to others, and require that men should be just, as well as kind.
I am of opinion that the verdict in this case is contrary both to law and evidence and that a new trial ought to be granted.

New trial granted.